UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Houston Division

| | |
|---|---|
| ZHICHAO SUN,  <br><br>　　　　*Plaintiff*,  <br><br>v.  <br><br>PROS, Inc.,  <br><br>　　　　*Defendant*. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### CIVIL COMPLAINT FOR EQUITABLE
### AND MONETARY RELIEF AND DEMAND FOR JURY

Plaintiff Zhichao Sun brings this civil complaint of unlawful retaliation and interference in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, *et seq.*, and discrimination based on national origin (Chinese) in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") against Defendant PROS, Inc. ("PROS").

### PARTIES

1.	Plaintiff Zhichao Sun, originally from China, is lawfully in the United States under an H4 visa and is domiciled in Houston, Texas.

2.	Defendant PROS is a Delaware corporation that has a principal place of business at 3100 Main St., Suite 900, Houston, Texas 77002.  Defendant may be served by serving its agent for service of process, Corporate Service Company dba CSC-Lawyers Inc., 211 E. 7th St., Suite 620, Austin, Texas 78701.

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically the FMLA and Title VII.

2. This Court has personal jurisdiction over Defendant PROS because it has regular contacts with Texas and regularly transacts business in this judicial district.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the unlawful employment practices occurred within this judicial district, which was the primary location of Plaintiff's employment with Defendant PROS.

4. Sun sufficiently exhausted his administrative remedies with the EEOC and received notice of his right-to-sue in federal district court on or about May 24, 2018.

## FACTUAL ALLEGATIONS

5. Sun is orginially from China, and he worked at PROS, through an H1-B work visa, from on or about August 13, 2012, until his unlawful termination on or about March 31, 2017. Sun was earning $68,805.00 at the time of his termination, and his title was associate II implementation consultant. There were approximately only five other Chinese employees (or less) in Sun's immediate division.

6. PROS issued Sun satisfactory or above satisfactory performance evaluations throughout his tenure, periodically increased his salary, and promoted him in September 2013 to the position of Implementation Consultant II.

7. PROS consistently placed Sun on projects with urgent deadlines and depleated resources to met those deadlines. PROS did not place non-Chinese employees on these types of projects.

8. In or about March 2016, Sun reported to his supervisor Chris Pfeffer that he believed that PROS was not compensating him the correct prevailing wage as required by the H1-B visa petition. PROS also paid non-Chinese employees higher wages than Sun. Pfeffer dismissed Sun's complaint saying that PROS was paying him appropriately and advised him to compare his salary using Glassdoor.com.

9. PROS submitted a petition to the U.S. Department of Homeland Security to renew Sun's H1-B visa in or about April 2016. PROS completed, signed, and certified the Labor Condition Application for Nonimmigrant Workers (ETA Form 9035 & 9035E) ("LCA") when it submitted this petition.

10. The LCA contained the following section requiring PROS to agree to four labor condition statements including one that states it will pay its nonimmgrates at least the prevailing wage:

**H. Employer Labor Condition Statements**

*Important Note:* In order for your application to be processed, you MUST read Section H of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Employer Labor Condition Statements" and agree to all four (4) labor condition statements summarized below:
  (1) **Wages:** Pay nonimmigrants at least the local prevailing wage or the employer's actual wage, whichever is higher, and pay for non-productive time. Offer nonimmigrants benefits on the same basis as offered to U.S. workers.
  (2) **Working Conditions:** Provide working conditions for nonimmigrants which will not adversely affect the working conditions of workers similarly employed.
  (3) **Strike, Lockout, or Work Stoppage:** There is no strike, lockout, or work stoppage in the named occupation at the place of employment.
  (4) **Notice:** Notice to union or to workers has been or will be provided in the named occupation at the place of employment. A copy of this form will be provided to each nonimmigrant worker employed pursuant to the application.

1. **I have read and agree to** Labor Condition Statements 1, 2, 3, and 4 above and as fully explained in Section H of the Labor Condition Application – General Instructions – Form ETA 9035CP. *     ☐ Yes  ☐ No

11. The LCA also contained a declaration of the employer certifying that it agreed to comply with the labor condition statements, instructions in the application, and all relevant regulations, and it advised that making false representations on the form can lead to civil or criminal action under 18 U.S.C. 1001, 18 U.S.C. 1546, or other provisions of the law. Despite the falsity of the representation, PROS signed the LCA indicating that it was in compliance with

3

all requirements, conditions, and laws.

12. The U.S. Department of Homeland Security approved Sun's H-1B petition in or around June 2016, and so Sun's H1-B status was valid from September 13, 2016, through September 12, 2019.

13. Sun reported to Pfeffer that he was planning to request medical leave in late June or early July 2016. Sun requested FMLA forms from HR soon after speaking with Pfeffer.

14. Sun was requesting FMLA leave due to his own medical condition (serious heart and liver issues, and stress), as well has his wife's medical condition related to her pregnancy. PROS benefits specialist Kim Salinas sent Sun an e-mail with the FMLA paperwork to complete on or about July 13, 2016.

15. Shortly thereafter PROS director of customer success Matt McClung and Pfeffer called Sun and notified him that he was being placed on a performance improvement plan ("PIP") on or about June 28, 2016. The PIP contained false and vague critques about Sun's ability to work well with others, had no concrete action items or objectives, and provided Sun with no actual notice on how to improve his performance.

16. Sun reported to HR that he believed that PROS was discriminatinag against him for taking time off for medical treatment on or about August 18, 2016.

17. Dr. Guang Chen, Sun's doctor in China, submitted the completed FMLA certification form on or about August 23, 2016, and PROS stated that it needed more information to properly support his FMLA request on or about August 30, 2016. Dr. Chen promptly responded on September 6, 2016.

18. PROS did not formally respond to Sun's FMLA request, and Sun took FMLA leave from on or about September 6, 2016, through on or about December 6, 2016. When Sun

4

returned from leave, PROS retroactively categorized the leave as approved FMLA leave.

19. In October 2016, Sun filed a wage complaint with the U.S. Department of Labor alleging that PROS did not pay him the correct prevailing wage. When Sun returned from FMLA leave, Pfeffer, McClung, and HR business partner Kim Kneidel presented Sun with the PIP in a meeting on or about December 9, 2016.

20. PROS did not place Sun on a single customer project following the forgoing meeting and instead had Sun collect and reorganize project and technology folders for hundreds of documents. This was an administrative task that was below Sun's technical skill set. Further, it did not involve Sun working with co-workers, isolating him from his coworkers.

21. On or about December 22, 2016, Sun reported to HR business partner Kim Kneidel his concerns about his wage as compared to others in his division. Kneidel dismissed Sun's concerns.

22. On or about January 30, 2017, PROS extended Sun's PIP and then assigned Sun to another urgent project, again depriving him a fair opportunity to show improvement in his allegedly deficient performance.

23. On or about March 30, 2017, PROS provided Sun notice of his termination and terminated him the next day, March 31, 2017.

24. The U.S. Department of Labor subsequently found that PROS failed to pay Sun the appropriate prevailing wage on or about October 23, 2017. Separate from this finding, Sun hired a third-party company to perform a market analysis into his compensation compared to others, and the company also confirmed that PROS was underpaying Sun the required prevailing wage.

# COUNT I
### Family Medical Leave Act ("FMLA")
### 29 U.S.C. § 2615, *et seq.*
### Retaliation and Interference

25. Sun incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

26. PROS is an employer as defined by 29 U.S.C. § 2611(4)(A).

27. Sun is an employee as defined by 29 U.S.C. § 2611(2)(A).

28. Sun had a right under the FMLA to take twelve (12) work weeks of leave during any twelve (12) month period for a serious health condition. 29 U.S.C. § 2612(a)(1)(D).

29. It is unlawful for an employer to discharge or discriminate against an individual because an individual has given, or is about to give, any information with any inquiry or proceeding relating to his or her FMLA rights. 29 U.S.C. § 2615(b).

30. Sun engaged in protected activity under the FMLA when: he reported his intent to take medical leave to his supervisor in or about late June or early July 2016; he asked for FMLA forms from HR in or about late June or early July 2016; he reported unlawful retaliation for requesting taking medical leave to HR and his supervisors on or about August 18, 2016; and when he exercised his right to take FMLA leave from on or about September 6, 2016 through on or about December 6, 2016.

31. PROS retaliated against Sun by subjecting him to adverse actions in response to Sun exercising his rights under the FMLA.

32. PROS also interfered with Sun's right to take FMLA leave when it failed to notify Sun of any deficiencies in the forms he submitted and when it failed to formally notify him that his FMLA leave was approved.

33. Sun suffered adverse actions when PROS provided him notice of the PIP on or

about July 28, 2016, implemented the PIP or about December 9, 2016, and terminated his employment on or about March 31, 2017.

34. PROS's stated and forthcoming reasons for terminating Sun are pretext for unlawful discrimination.

35. Sun has been damaged as a result of the unlawful acts of PROS.

36. Accordingly, Sun demands such legal or equitable relief as will effectuate the purposes of the FMLA, including, but not limited to economic damages, liquidated damages, reasonable attorney's fees and costs, pre-judgment interest, and any other relief that this Court deems just and equitable.

## COUNT II
### Discrimination based on National Origin
### Violation of Title VII

37. Sun incorporates the allegations in the foregoing paragraphs as though alleged herein.

38. Sun is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

39. PROS is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

40. Sun performed his job satisfactorily as evidenced by his performance reviews and PROS filing a petition to renew his H1-B work permit in or about April 2016.

41. PROS violated 42 U.S.C. § 2000e, *et seq.,* by placing him on a PIP and terminating Sun because he is Chinese.

42. PROS unlawfully discriminated against Sun by treating him more harshly than it did non-Chinese employees when it terminated him.

43. The reasons for terminating Sun's employment are false and are pretext for unlawful discrimination.

44. Sun has exhausted his administrative remedies under Title VII.

7

45.	For PROS's unlawful discrimination against Sun, pursuant to Title VII, Sun is entitled to general and special damages, economic damages including front and back pay, reinstatement, promotion, compensatory damages, reasonable attorney's fees to be paid by PROS, as well as his costs and any other legal and/or equitable relief that this Court deems appropriate

## PRAYER FOR RELIEF

Based on the foregoing, Sun respectfully requests that the Court enter judgment in his favor and award to him the following relief:

a.	Legal and equitable relief, including reinstatement;

b.	Economic damages;

c.	Liquidated damages;

d.	Attorney's fees and costs;

e.	Pre-judgment interest; and

f.	Any other relief that this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff Zhichao Sun demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

By:   */s/ John E. Chapoton. Jr*
John E. Chapoton, Jr.
Texas Bar No. 04137010
Federal ID 13688
jchapoton@css-firm.com
Chapoton Sanders Scarborough LLP
952 Echo Lane, 250
Houston, Texas 77024
Tel: (713) 357-9711
Fax: (713) 357-9690
*Plaintiff's Attorney in Charge*

Of Counsel:
Gwyneth A. Campbell
Texas Bar No. 24005206
Federal ID 25576
gcampbell@css-firm.com
Chapoton Sanders Scarborough LLP
952 Echo Lane, Suite 250
Houston, Texas 77024

*Pro hac vice* motion forthcoming:
R. Scott Oswald, Esq.
Nicholas Woodfield, Esq.
The Employment Law Group, P.C.
888 17th Street, NW, 9th floor
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
nwoodfield@employmentlawgroup.com