United States District Court
Southern District of Texas
**ENTERED**
August 12, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ZHICHAO SUN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-2833 |
| | § | |
| PROS INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant PROS, Inc.'s Motion for Summary Judgment. Dkt. 32. After carefully reviewing the motion, response, and reply, the submissions, and the applicable law, the Court finds summary judgment for PROS should be **GRANTED IN PART AND DENIED IN PART**.

### I.    Background

Defendant PROS, Inc. hired Plaintiff Zichao Sun on August 13, 2012 as an Implementation Consultant I at its Houston headquarters. In 2013, PROS promoted Sun to Implementation Consultant II. Sun worked with multiple supervisors on various projects. Several supervisors expressed concerns about Sun's behavior and attitude—specifically, that he was difficult to work with, combative, rude, and not receptive to feedback. Around July 2016, Sun sought information about FMLA leave and personal time off options and submitted a request for FMLA leave. Around the same time, Sun's supervisors decided to place Sun on a Performance Improvement Plan ("PIP") which they

delivered to Sun on December 9, 2016, after he returned from leave. PROS terminated Sun on March 30, 2017.

In this action, Sun asserts that (1) PROS paid him a lower salary than his non-Chinese counterparts in violation of Title VII, and (2) PROS terminated him in retaliation for exercising his FMLA rights.

## II.    Legal Standard

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations and internal quotations omitted). In deciding whether a genuine and material fact issue has been created, the Court must review the facts and the inferences to be drawn from those facts in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

## III.    Analysis

### A. Sun's Wage Discrimination Claim

PROS argues that Sun's wage discrimination claim fails because he cannot establish a prima facie case of wage discrimination and, alternatively, that PROS had a

legitimate, non-discriminatory reason for the pay disparity, which Sun cannot show was pretext for national-origin discrimination. The Court finds that summary judgment on Sun's wage discrimination claim should be denied.

To make out a prima facie case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). A plaintiff's prima facie case creates an inference of discrimination, which the employer is required to rebut with a legitimate non-discriminatory reason for the pay disparity. *Id.* If the employer provides such a reason, the burden shifts back to the plaintiff to establish that the employer's stated reason is pretextual. *Id.* To avoid summary judgment, the plaintiff must present evidence that both (1) rebuts the employer's non-discriminatory reason, and (2) creates an inference that national origin was a determinative factor in the challenged employment decision. *Id.*

First, PROS argues Sun has not identified any similarly-situated employees outside of his protected class who were paid more than he was. PROS argues that the comparators Sun has identified are not actually similarly situated because (1) none of them is an H-1B visa holder, and (2) because they do not have a history of prolonged personality conflicts, performance problems, or behavioral issues similar to Sun's.

The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir.

2017); *see also Taylor*, 554 F.3d at 523. This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share[] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant. *Alkhawaldeh*, 851 F.3d at 426 (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).

Sun offers three employees as comparators who worked for PROS and reported to Sun's supervisor, Chris Pfeffer: Benjamin H., John K., and Bradley S.[1] The evidence reflects their start dates, starting salaries, and salaries when PROS terminated Sun:

|  | Start Date | Starting Salary | Salary March 31, 2017 |
|---|---|---|---|
| Benjamin H. | April 1, 2013 | $69,000 | $86,800 |
| John K. | January 9, 2012 | $62,000 | $86,598 |
| Bradley S. | June 17, 2013 | $65,000 | $81,200 |
| Zichao Sun | August 13, 2012 | $61,000 | $68,805 |

The Court finds that Sun has met his burden to establish a *prima facie* case of pay discrimination. He has identified three other employees who were hired for the same job position, within a year of Sun's hiring, who reported to the same supervisor.[2] PROS

---

[1] PROS' interrogatory responses identify Sun's supervisor as Chris Pfeffer. Dkt. 34-4 at 3. Other evidence indicates Sun did not begin reporting to Pfeffer until October 2015. Dkt. 33-1 at 4. The Court finds that there is at least conflicting evidence whether Sun shared the same supervisor or had his employment status determined by the same person as his comparators during the relevant time period.

[2] PROS asserts Sun has not met his burden because he does not identify the national origin of his alleged comparators as non-Chinese. The evidence discloses that certain employees are Chinese (*see, e.g.*, Dkt. 33-1 at 15) and PROS does not dispute that the other comparators are not Chinese. Recognizing that it is Sun's burden to show that his comparators are outside of his protected class, the Court declines to dismiss this claim on that ground in light of this record.

points to no evidence of differences in their respective disciplinary records prior to hiring. All of them were offered higher starting salaries than Sun.

PROS argues that Sun's proffered comparators did not have a behavioral history comparable to Sun's, disqualifying them as comparators. But PROS does not point to a violation or infringement as a legitimate, non-discriminatory basis for the pay disparity occurring before April 28, 2015, when PROS asserts Tom Moore planned to place Sun on a PIP. Dkt. 33-1 at 4, ¶ 9.[3] This event occurred within the limitations period.

PROS argues that Sun has failed to identify proper comparators because none of his proffered comparators are also working under H-1B visas. The Court finds that difference in H-1B visa status is not a basis for finding that Sun's proffered comparators are dissimilarly situated. PROS points to no controlling authority requiring a plaintiff to show that his or her proffered comparators share the same immigration or nonimmigrant classification.[4]

PROS asserts that it set Sun's salary in accordance with market data when Sun was hired straight out of college. Dkt. 35 at 10 (citing Dkt. 33-1 at ¶¶ 4, 59 ("PROS considers behavioral and performance problems when making compensation adjustments. PROS also compensates employees according to market data."). Since Sun has presented

---

[3] PROS also presents evidence that a human resources investigator found Sun's behavior during a training session inappropriate in November 2012. Dkt. 32 at 7. But PROS does not assert this as a basis for any pay disparity or cite to any evidence in the record indicating this incident factored into Sun's compensation.

[4] In support of this contention, PROS cites *Vorrey v. City of Brownsville*, Civ. Action 17-222, 2018 WL 7291458, at *8 (S.D. Tex. Oct. 5, 2018) (holding that under the "nearly identical" standard, the plaintiff, an H-1B visa holder, "must be compared to other H-1B visa holders"). On the record before the Court, it is not clear that this opinion determines the outcome of Sun's claim.

evidence of comparators who were "similarly situated" under controlling authority, this assertion is properly framed as PROS' proffered legitimate, non-discriminatory reason for the pay disparity. *See, e.g., Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215, 219 (5th Cir. 2015) (considering defendant's similar argument as proffered legitimate, non-discriminatory reason for pay disparity). Accordingly, PROS would have the burden to show that it paid Sun's comparators a higher starting salary based on market data. PROS points only to general testimony that salaries varied based on market data, and that Sun was hired immediately upon graduation from college, without explaining whether Sun's comparators were more experienced. This evidence does not establish the absence of any fact issue whether Sun's starting salary was lower than that of his comparators based on a legitimate, non-discriminatory reason.

The Court similarly finds that Sun has met his burden to show there is a genuine issue of fact whether PROS' proffered basis for the pay disparity is pretextual. Although PROS hired Sun outside the statute of limitations for his pay discrimination claim, which cuts off at November 18, 2014, evidence of a pay disparity originating before the limitations period is arguably relevant to show that a pay disparity within the limitations period was the result of discrimination as opposed to a nondiscriminatory reason the defendant cited. Each paycheck that delivered less to Sun based on impermissible discrimination would be actionable. *See, e.g., Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 647 (2007) (Ginsburg, J. dissenting); *Blasingame v. Eli Lilly & Co.*, Civ. Action H-11-4522, 2013 WL 5707324, at *4 (S.D. Tex. Oct. 18, 2013) (Lake, J.).

Accordingly, a reasonable juror could find that some of Sun's pay within the limitations period was discriminatorily lower than that of his comparators. Summary judgment for PROS on Sun's wage discrimination claim is **DENIED**.

### B.  Sun's FMLA Retaliation Claim

Retaliation claims for exercising FMLA rights are subject to the *McDonnell Douglas* burden-shifting framework. To make a prima facie case of retaliatory discharge, the employee must show that (1) he engaged in a protected activity, (2) the employer discharged him, and (3) there is a causal link between the protected activity and the discharge. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020). "Once an employee propounds a prima facie case of interference or retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* Then, "the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Id.*

PROS first argues that Sun's FMLA retaliation claim fails because he cannot establish a causal link between Sun's request for FMLA protection and an adverse employment decision. PROS next argues that even if Sun has established a prima facie case, PROS had a legitimate, non-retaliatory reason for terminating Sun's employment, and Sun cannot show that PROS' reason was pretext for retaliation. The Court finds that summary judgment for PROS on Sun's FMLA retaliation claim should be granted based on PROS' legitimate reason and Sun's lack of pretext evidence.

###### i. PROS has met its burden to show it terminated Sun for legitimate, non-retaliatory reasons.

PROS asserts that it terminated Sun's employment because of a history of behavioral issues. Dkt. 33-3. The Senior Human Resources Business Partner for PROS, Kim Kneidel, wrote a confidential memo dated March 30, 2017, setting out the bases for Sun's termination:

- Sun's coworkers, supervisors, and customers often, if not consistently, reported that Sun was hard to work with.
- Sun frequently responded to feedback with what his supervisors considered to be a disrespectful, combative, or defensive attitude that indicated he was not receptive to feedback.
- Sun failed his Performance Improvement Plan.
- His supervisors did not believe that continued counseling or progressive disciplinary action would result in Sun achieving or sustaining satisfactory performance.

Dkt. 33-3 at 59–63. PROS presents evidence that its employees expressed concerns about Sun's attitude and behavior beginning as early as 2014, and harbored serious concerns about Sun's prospects at PROS before Sun began asking about FMLA leave.

For example, Sun's 2014 performance evaluation reported that a customer had asked for Sun to be removed from their project. Dkt. 33-1 at 25 ("AirGas (or Deloitte) asked that he be removed from the project."). The 2014 evaluation included reports that Sun "often challenged" his supervisors "and asserted that he shouldn't be the one doing the work," "made it very clear when he wasn't happy with the work we need him to perform," and caused a "highly regarded" colleague to become "livid over a meeting in which he felt Zico was nothing but disrespectful of the opinions and experience of others

in the room. (This is a different individual than the one who provided similar written feedback above.)" Dkt. 33-1 at 30. Sun's supervisor at the time, Tom Moore, considered placing Sun on a Performance Improvement Plan as early as April 2015. Moore drafted a PIP in which he documented these and other complaints that, generally, "[Sun] can be combative and sometimes difficult to work with." Dkt. 33-1 at 33.[5]

Beginning in February 2016, Sun was assigned to the "L&W" project, managed by Amol Modgi. As early as April 2016, Modgi reported that Sun had interpersonal conflicts with other team members, needed to improve his communication skills, and was disrespectful toward him and others on the team. Dkt. 33-1 at 48. In April, Sun sent an email to his colleague Peter Bielanski, which Bielanski forwarded to supervisors, complaining that Sun's tone in the email was "belittl[ing]" and "condescending." Dkt. 33-1 at 48. In May 2016, Chris Pfeffer and another PROS employee, Sam McIntosh, exchanged messages indicating that they had both had unusually frustrating interactions with Sun. Dkt. 33-1 at 52 ("I remember you telling me once you and Zico almost came to blows[,] and I get it now."). On July 7, 2016, Amol Modgi wrote to Pfeffer and Senior Manager Kim Watson, "I am not seeing any change in [Sun's] attitude. He is fighting [colleague] Laura [Story] every step of the way and not being collaborative . . . . I have provided all coaching I can and I am seriously questing [sic] if my time and effort are worth it." Dkt. 33-1 at 69.

---

[5] Sun argues that it is improper for PROS to rely on this draft PIP. This argument is addressed below in the Court's pretext analysis.

Supervisors repeatedly engaged Sun to discuss feedback about his communication style and attitude. *See, e.g.*, Dkt. 33-1 at 59–61 (emails between Modgi and Sun, May 10–12, 2016) (outlining feedback and clarifying that "my feedback is general communication"); Dkt. 33-1 at 57 (email from Pfeffer to Watson, June 30, 2016) (documenting feedback meeting with Sun in which Pfeffer advised Sun about the need for "not being confrontational, being pleasant to work with, being a team player, etc."); Dkt. 33-1 at 72 (text messages between Pfeffer and Sun, July 7, 2016) (advising Sun to "be a good team member, help, do what's asked of you . . . . The conversation we had last week wasn't a good one, but like I mentioned after, you can turn it around.").

Those who met with Sun to discuss these concerns frequently reported that Sun was not receptive to feedback, and usually exhibited the problematic behaviors *during* the meeting that merited the meeting in the first place. For example, after meeting with Sun on July 28, 2016, to discuss Sun's behavioral issues, McClung wrote:

> Zico immediately went into defense . . . . [He] went on that PROS as a company is not successful and that his behavior should not matter . . . . Honestly his comments about PROS as a company and its projects not being successful and the way he went on a rant it seemed to me it was near grounds for immediate termination.

Dkt. 33-7 at 15.

The Court finds that PROS presents sufficient summary judgment evidence that it terminated Sun based on behavioral issues. *See, e.g.*, *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (affirming summary judgment for employer where employer terminated plaintiff in part based on inappropriate behavior);

*Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) (affirming summary judgment where employer asserted "difficulties in working with others" as one legitimate basis for terminating plaintiff).

Accordingly, the burden shifts back to Sun.

### ii. Sun does not meet his burden to rebut PROS' proffered legitimate, non-retaliatory reasons for terminating him.

To carry this burden, the plaintiff must rebut each non-retaliatory reason articulated by the employer. *See Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016). Sun must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions." *Id.* "An explanation is false or unworthy of credence, and thus pretextual, if it is not the real reason for the adverse employment action." *Id.* (internal quotations omitted).

Sun argues PROS' expressed reasons for terminating Sun are pretexts for retaliating against him because he exercised his rights under the FMLA, based on the following:

- The reasons Kneidel cited for Sun's termination are inconsistent with those expressed by PROS' Staffing Coordinator, Courtney Svatek, PROS' Director of Professional Services, Matt McClung, and Pfeffer. Dkt. 34 at 10–11. Specifically, Kneidel testified that the incident which prompted her to write Sun's termination memo occurred between March 27 and 30, 2017. Evidence shows Svatek had been informed not to staff Sun on any new projects as of March 23, 2017, perhaps by McClung. Pfeffer testified that PROS terminated Sun because Sun did not sign his

PIP extension and got negative feedback from a project known as the Cargill Project.

- Despite asserting that it wanted to evaluate Sun based on his work with others as part of the PIP, McClung chose not to staff Sun to a project that would have given him the opportunity to exhibit progress.

- Salinas raised Sun's performance with Kneidel on July 22, 2016, which Sun asserts is suspicious, since Salinas typical job duties do not involve performance evaluation.

- McClung relies on Moore's draft PIP, which was never discussed with Sun.

- PROS improperly relies on Sun's reaction to receiving the PIP and Sun's failure to sign and deliver the PIP extension. The parties dispute the manner in which Sun returned the PIP extension.

- PROS created the PIP after learning of Sun's potential medical leave.

Viewing the evidence in the light most favorable to Sun, and considering all of these assertions of pretext individually and as a whole, the Court finds that Sun has not presented evidence that raises a genuine issue of material fact whether PROS' explanation for terminating Sun is pretextual. Fundamentally, Sun has not met his burden because he has not presented any evidence rebutting PROS' assertion that it terminated Sun for his inappropriate behavior. He does not dispute the events PROS describes as giving rise to complaints about his behavior. He does not present evidence tending to negate that PROS was legitimately concerned that his behavior was disrupting his teams' work and PROS' relationships with its clients.

PROS has consistently maintained that it terminated Sun because he was difficult to work with and did not act as a team player. There is no evidence that PROS based its termination decision on Sun's request for FMLA leave. There is no evidence, either

circumstantial or direct, that would permit a reasonable jury to believe that PROS' stated reasons for terminating Sun were false and that illegal retaliation was the actual reason.

Sun's arguments on pretext are unavailing. To the extent Sun has identified inconsistencies between the testimony of his supervisors and PROS decisionmakers about the specific event that "precipitated" his termination, these inconsistencies are not of the kind that would lead a reasonable jury to believe that PROS' stated reasons for terminating Sun were pretextual. In response to probing deposition questions, Kneidel, McClung, and Pfeffer may have pinpointed different events as the catalyst for terminating Sun. *See, e.g.*, Dkt. 34-8 at 36 (Knediel Dep.) (testifying "I know there was an incident that would have precipitated starting to look at putting something together, and I'm just seeing if they are here. I know it was probably sometime between March 27th and the 30th. . . . [E]ssentially the last incident we had with [Sun was] when he was giving [Pfeffer] some challenges back on completing a training, at that point we just believed that things were not getting better and we need to start looking at doing a separation."); Dkt. 34-9 at 7 (Pfeffer Dep.) (testifying that "[a]t the end of the day, it was a confluence of events" including Sun's "performance during the pay review period" and Sun's lack of progress in response to feedback). Different supervisors, all aware of a persistent behavioral issue, may reach the conclusion that a given employee should not be staffed to new projects, or should immediately be terminated, at slightly different times. That does not give rise to a finding of pretext when, as here, the core reason for the termination is consistent: Sun's attitude was unworkable, and it was not changing, despite efforts to give him feedback and an opportunity to change. *See, e.g.*, *Smith v. City of St.*

*Martinville*, 575 F. App'x 435, 442 (5th Cir. 2014) ("While we agree that inconsistent or post-hoc explanations for a termination decision may be indicative of pretext, the record does not reflect that that was the case here.") (internal citations omitted).

Sun's other arguments do not change the Court's conclusion, either. First, the fact that Salinas asked about Sun's performance is irrelevant. Salinas was not involved in the decision to discharge Sun. Dkt. 34-8 at 91 (Kneidel Dep.) (testifying that those involved in the decision to terminate Sun were herself, Pfeffer, McClung, and PROS' Chief People Officer, Wagner Williams). Second, the fact that Moore never specifically discussed his draft PIP with Sun does not tend to show pretext. Indeed, the fact that Moore drafted a PIP and discussed the feedback central to the PIP with Sun many months before Sun's termination bolsters PROS' legitimate, non-retaliatory basis for terminating Sun. Third, the dispute over whether and how Sun returned the PIP is ultimately inapposite, because it is just one of several examples of Sun's conduct that led PROS to believe Sun's behavior would not improve. Fourth, the fact that McClung declined to staff Sun to a specific project does not suffice to show that PROS was sabotaging Sun's PIP. Dkt. 34-7 at 48. The record considered as a whole discloses that PROS gave Sun several opportunities to incorporate feedback about his attitude and behavior, and that the problems persisted.

Finally, the parties do not dispute that PROS created Sun's PIP after learning of Sun's request for medical leave. That fact is not enough for Sun to defeat summary judgment, however, considering the duration and consistency of concerns about Sun's attitude and behavior. Denying summary judgment for PROS on this basis would

"unnecessarily tie the hands of employers." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("[T]emporal proximity is just one of the elements in the entire calculation." (internal citations and quotations omitted)).

Accordingly, summary judgment for PROS on Sun's FMLA retaliation claim is **GRANTED**.

## IV.    Conclusion

PROS' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Summary judgment for PROS on Sun's wage discrimination claim is **DENIED**. Summary judgment for PROS on Sun's FMLA retaliation claim is **GRANTED**.

SIGNED at Houston, Texas, this 12th day of August, 2020.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE